IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PBS COALS, INC., | ) |
|                         Plaintiff, | )    CIVIL ACTION NO. 3:13-240 ) )    JUDGE KIM R. GIBSON |
| v. | ) |
| CDS FAMILY TRUST, LLC; THE CARL DELSIGNORE FAMILY TRUST; and CARMEN P. DELSIGNORE, JR., *in his capacity as Trustee of The Carl DelSignore Family Trust*, | ) |
|                         Defendants. | ) |

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff PBS Coals, Inc. ("PBS") seeks a declaratory judgment establishing its rights and obligations under an alleged agreement to mine coal in Garrett County, Maryland. Before the Court is a motion to dismiss for lack of personal jurisdiction (ECF No. 11) filed by Defendants CDS Family Trust, LLC, the Carl DelSignore Family Trust, and Carmen P. DelSignore, Jr., in his capacity as trustee of the Carl DelSignore Family Trust (collectively, "Defendants"). For the reasons that follow, the motion will be denied.

**II.    Background**

PBS is a provider of metallurgical and steam coals for the metals, energy, and industrial sectors. (Compl. ¶ 6). PBS is a Delaware corporation maintaining its principal office at 1576 Stoystown Road, Friedens, Pennsylvania. (*Id.* ¶ 1). Defendant CDS Family Trust, LLC ("CDS") is a Delaware limited liability company with its principal office at 815

Table Rock Road, Oakland, Maryland. (*Id.* ¶ 2). The remaining Defendants—the Carl DelSignore Family Trust and its trustee, Carmen P. DelSignore, Jr.—are also citizens of Maryland. (*Id.* ¶ 3).

PBS claims that, on or about January 13, 2011, it acquired a permit to mine coal in the Table Rock coal lands in Garrett County, Maryland. (Compl. ¶ 7). At that time, PBS contacted Defendants—the owners of the relevant parcels of land—to negotiate the terms of a coal lease. In exchange for a royalty, Defendants allegedly granted PBS "the exclusive right to mine, excavate, remove, ship, and market the coal from the portion of Table Rock at issue." (*Id.* ¶ 10). Defendants do not dispute that the parties have attempted to negotiate a lease, but they claim that these negotiations occurred only after PBS extracted the coal without Defendants' permission. (ECF No. 12-1 ¶ 4).

PBS eventually mined, hauled, processed, and sold 36,409 clean tons of coal from Defendants' land. (*Id.* ¶ 13). PBS now claims that it owes Defendants a royalty that accounts for its costs associated with transporting the coal from the mine site to a Pennsylvania preparation plant, a distance of approximately 82 miles. (*Id.* ¶ 16). Defendants disagree with this royalty calculation.

On October 16, 2013, PBS issued a wire transfer to Defendants in the amount of $185,377.50. (Compl. ¶ 19). Defendants refused this payment. (*Id.*). To date, the parties have not executed a written lease, and they dispute the applicable royalty fee. On October 22, 2013, PBS filed this declaratory judgment action, seeking a declaration that PBS owes a royalty in the amount of $185,377.50. PBS brings this suit under four

alternative legal theories, including an express contract (Count 1), a contract implied-in-fact (Count 2), unjust enrichment (Count 3), and promissory estoppel (Count 4).

Defendants now move to dismiss this case under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[1]

### III. Standard of review

When reviewing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court must accept as true the factual allegations in the pleadings and resolve all factual disputes in the plaintiff's favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). The court need not limit the scope of its review to the pleadings and instead must consider affidavits and other competent evidence submitted by the parties. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Once the defendant raises a question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Although the plaintiff must ultimately prove personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the early stages of litigation. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Rather, the plaintiff must "present[] a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts

---

[1] Defendants also move to dismiss this action for insufficient service of process under Fed. R. Civ. P. 12(b)(5), alleging that Defendants are not subject to personal jurisdiction in Pennsylvania and, thus, service of process was insufficient under Fed. R. Civ. P. 4(k)(1)(A). For the reasons stated in this decision, Defendants are subject to personal jurisdiction in Pennsylvania. Accordingly, the Court will not address this alternative ground for dismissal.

3

between the defendant and the forum state." *Id.* at 1223 (internal quotations and citations omitted). Once the plaintiff meets this burden, the defendant must establish the presence of other considerations that would render personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted).

**III.  Discussion**

A district court sitting in Pennsylvania has personal jurisdiction over the parties to the extent provided under Pennsylvania law. Fed. R. Civ. P. 4(k)(1)(A). The Pennsylvania long-arm statute establishes jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322. Thus, in determining whether personal jurisdiction exists, the test is whether, under the due process clause of the Fourteenth Amendment, the defendant has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

A court may obtain personal jurisdiction over a defendant either through general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n. 9 (1984). PBS does not assert that Defendants are subject to general jurisdiction in Pennsylvania.[2] Accordingly, the sole issue before the Court is whether specific jurisdiction exists in this case.

---

[2] In opposing the motion to dismiss, PBS asserts that Defendants are subject only to specific jurisdiction in Pennsylvania. (*See* ECF No. 16). Indeed, Defendants are not subject to general jurisdiction in Pennsylvania because CDS is not incorporated in Pennsylvania, nor does it have its

4

The Third Circuit Court of Appeals uses a three-part test in determining whether specific jurisdiction exists:

> First, the defendant must have purposefully directed [its] activities at the forum. . . . Second, the litigation must arise out of or relate to at least one of those activities. . . . And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations and citations omitted). In essence, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum" such that these activities amounted to "a deliberate targeting of the forum." *Id.* The Court now addresses whether PBS has established the requisite minimum contacts for specific jurisdiction.

### A. Purposeful contacts with the forum

The first step in the specific-jurisdiction analysis is to determine whether the defendants have purposefully directed activities at the forum. In the context of a contract dispute, the fact that a defendant has contracted with a resident of the forum state is insufficient to establish personal jurisdiction. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Nevertheless, minimum contacts "may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Furthermore, the court may consider the defendant's actual presence in the forum during the pre-contractual negotiation process,

---

principal place of business in Pennsylvania. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (discussing the requirements for general jurisdiction over business entities).

along with any "communication[s] [made] by electronic facilities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150–51 (3d Cir. 2001).

Defendants argue that the Court lacks specific personal jurisdiction because (1) the mine site is located in Maryland, (2) performance of the alleged agreement occurred in Maryland, and (3) Defendants did not solicit any business in Pennsylvania. (ECF No. 12). In response, PBS asserts that personal jurisdiction is proper because the parties negotiated the alleged agreement in Pennsylvania. PBS further asserts that performance of the alleged agreement occurred in Pennsylvania because PBS hauled, cleaned, processed, and marketed the coal in Pennsylvania. (ECF No. 16).

After reviewing the record, the Court finds that Plaintiffs have alleged sufficient facts to show that Defendants have purposefully directed activities at Pennsylvania. A PBS executive filed an affidavit stating that, during the negotiation process, Defendants met with PBS representatives in Pennsylvania on two occasions. (ECF No. 16-1 ¶¶ 6–7). During these meetings, and through e-mails and telephone calls, PBS representatives allegedly informed Defendants that the coal would be hauled from the mine site to Pennsylvania and that "there could be no royalty on th[e] coal until it was hauled, cleaned, processed, and sold from Pennsylvania." (*Id.* ¶¶ 6–8). According to PBS, the parties exchanged about 40 e-mails during their negotiations. (*Id.* ¶ 8).

Aside from negotiations occurring in Pennsylvania, the terms of the parties' purported agreement included significant activities in Pennsylvania. According to PBS, the parties agreed that Defendants would receive a royalty after the coal was hauled,

6

cleaned, processed, and sold in Pennsylvania. As well, payment of the royalty was to be initiated through a wire transfer in Pennsylvania.

The Court recognizes that the parties dispute many of the facts surrounding the alleged contract at issue. For instance, Defendants assert that the parties did not discuss any performance of the contract occurring in Pennsylvania. Defendants further assert that PBS mined coal from Defendants' land without permission. (ECF No. 12-1 ¶¶ 3–4). For purposes of a Rule 12(b)(2) motion, however, the court must resolve all factual disputes in the plaintiff's favor. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 557 (M.D. Pa. 2009). At this early stage of litigation, therefore, the Court accepts as true the factual allegations made by PBS and concludes that Defendants have purposefully directed business activities at Pennsylvania.

### B. The relatedness requirement

The second step in the specific-jurisdiction analysis is to determine whether the litigation relates to the defendant's contacts with the forum. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317, 320–23 (3d Cir. 2007). The Third Circuit has never adopted a "bright-line test" for this relatedness requirement. *Id.* at 321. Nevertheless, in contract cases, the requirement is one of "substantive relevance." *Id.* at 320 (citation omitted). In other words, the court must determine whether "the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted).

Here, PBS has made a prima facie showing of relatedness because Defendants' contacts with Pennsylvania were instrumental in forming the alleged contract. As discussed above, PBS has alleged sufficient facts that, if true, establish Defendants' purposeful business activities directed at Pennsylvania. For instance, Defendants travelled to Pennsylvania twice to negotiate the contract and, during these negotiations, Defendants exchanged about 40 e-mails with PBS, a resident of Pennsylvania.

For purposes of this relatedness requirement, the Court emphasizes that there is no mechanical rule applied in every case. *O'Connor*, 496 F.3d at 323. Nevertheless, the constitutional touchstone is whether litigation is reasonably foreseeable in the forum. *Id.* at 322–23. When reviewing the complaint, the Court finds that the foremost issue is whether Defendants agreed to compensate PBS for transporting the coal from the mine to the cleaning plant in Pennsylvania. PBS claims that Defendants have "refuse[d] to recognize in the royalty the value conferred on them by, *inter alia*, PBS's transport of the coal . . . to [Pennsylvania]." (Compl. ¶ 33). Given the nature of this dispute, a direct causal connection exists between Defendants' business contacts with Pennsylvania and the claims at issue such that this litigation was reasonably foreseeable in Pennsylvania.

### C. Fair play and substantial justice

Having now concluded that the requisite minimum contacts exist, the Court considers the third prong of the jurisdictional analysis: whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 324 (3d Cir. 2007) (quotation omitted). "The existence of

minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 324 (quotation omitted).

In support of their Rule 12(b)(2) motion, Defendants do not explain how the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Defendants merely argue that, without any minimum contacts, the exercise of jurisdiction does not comply with fair play and substantial justice. (ECF No. 12 at 8). Because minimum contacts exist, Defendants' argument is without merit.

The Court further finds that none of the traditional "fairness factors" render jurisdiction unreasonable. The Supreme Court has identified the following factors to assist courts in determining whether jurisdiction is reasonable:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal quotation marks omitted). Here, Defendants would not endure unreasonable inconvenience by litigating in Pennsylvania. Furthermore, Pennsylvania has an interest in this dispute because PBS is a Pennsylvania resident claiming to have been injured in Pennsylvania. *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 678 (E.D. Pa. 1997). Finally, there is no judicial inefficiency or impairment of any substantive social policy resulting from jurisdiction in Pennsylvania.

## IV.     Conclusion

PBS has demonstrated a prima facie case of specific personal jurisdiction over Defendants in Pennsylvania.  Defendants have purposefully directed business activities at Pennsylvania, the claims arise from or relate to those activities, and no other factors render jurisdiction in Pennsylvania unfair or unreasonable.  Therefore, Defendants' motion to dismiss (ECF No. 11) will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PBS COALS, INC., | ) | |
| | ) | CIVIL ACTION NO. 3:13-240 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| CDS FAMILY TRUST, LLC; THE CARL | ) | |
| DELSIGNORE FAMILY TRUST; and | ) | |
| CARMEN P. DELSIGNORE, JR., *in his* | ) | |
| *capacity as Trustee of The Carl DelSignore* | ) | |
| *Family Trust,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this **19th** day of May 2014, for the reasons stated in the accompanying memorandum opinion, IT IS HEREBY ORDERED that Defendants' motion to dismiss for lack of personal jurisdiction and insufficient service of process (ECF No. 11) is DENIED.

BY THE COURT:

*/s/ Kim R. Gibson*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE